## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**TONY BRIDGES, et al.**                                              **CIVIL ACTION**

**VERSUS**                                                            **NO. 16-448**

**ABSOLUTE LAWN CARE**                                                **SECTION "G"(2)**
**LA, LLC, et al.**

## ORDER

Presently pending before the Court is the "Motion for Conditional Certification and Class Certification" by Plaintiffs Tony Bridges, Jonas Theophile, Derek Chairs, and Juan Calderon (collectively "Plaintiffs").[1] Also before the Court is Plaintiffs' related "Motion for Limited Discovery."[2] Defendants Absolute Lawn Care LA, LLC ("Absolute Lawn Care") and Robert L. Rogers (collectively "Defendants") oppose both motions.[3] The Court granted Plaintiffs leave to file replies.[4]

Upon initial review of the arguments of the parties, the Court concluded that supplemental briefing was necessary on the issue of whether the Court should determine whether Absolute Lawn Care is a "business enterprise engaged in commerce" under the Fair Labor Standards Act ("FLSA") as a threshold jurisdictional question before considering Plaintiffs' motion for conditional certification.[5] In response, Plaintiffs moved for limited discovery on the issue of whether Absolute Lawn Care is a business enterprise engaged in commerce under the FLSA.[6] Defendants opposed

---

[1] Rec. Doc. 20.

[2] Rec. Doc. 34.

[3] Rec. Docs. 23 & 38.

[4] Rec. Docs. 26 & 42.

[5] Rec. Doc. 33.

[6] Rec. Doc. 34.

Plaintiffs' motion for limited discovery[7] and filed a supplemental brief in response to the Court's briefing order.[8] Plaintiffs filed a supplemental brief in response to the Court's briefing order,[9] and the Court granted Plaintiffs leave to file a reply on their motion for limited discovery.[10] The Court granted Plaintiffs leave to file an additional supplemental brief in support of their initial motion for conditional certification under the FLSA and Rule 23 certification.[11]

Considering the record, the memoranda of counsel, and the applicable law, the Court will grant in part and deny in part Plaintiffs' motion, as follows. The Court will conditionally certify the following two FLSA classes:

(1) All former and current employees whose purported "bonus" . . . was not included in their regular rate of pay for purposes of paying overtime under the FLSA and/or who did not receive or had deductions to their attendance/productivity "bonus" which had the effect of reducing their overtime rate to less than 1 ½ times their regular rate of pay ("the Overtime Rate Collective"); and

(2) All former and current employees who ostensibly were classified as independent contractors . . . and were paid only their straight-time rate of pay . . . for hours worked over forty (40) in a workweek ("the Misclassification Collective").[12]

The Court will not, however, approve the content and form of Plaintiffs' proposed judicial notice or 90-day notice period at this time and instead will order the parties to meet, discuss, and report back regarding Plaintiffs' proposed notice and consent to sue forms, Plaintiffs' proposed notice period, and all other matters related to the conveyance of judicial notice. As to Plaintiffs' request

---

[7] Rec. Doc. 38.

[8] Rec. Doc. 39.

[9] Rec. Doc. 43.

[10] Rec. Doc. 42.

[11] Rec. Doc. 46.

[12] Rec. Doc. 20-1 at 2.

for Rule 23 class certification, the Court will not certify Plaintiffs' two putative classes at this time. Finally, the Court will deny Plaintiffs' limited discovery motion as moot.

## I. Background

### A.    *Factual Background*

Plaintiffs worked for Absolute Lawn Care as landscapers for an indefinite period of time.[13] Plaintiffs allege that they were nonexempt hourly employees entitled to overtime pay under the FLSA.[14] Plaintiffs allege that Defendants provided tools and supplies, set Plaintiffs' work schedules and assignments, monitored Plaintiffs' work, and determined Plaintiffs' rates of pay.[15] Plaintiffs allege that they regularly worked more than forty hours in a work week and were thereby entitled to overtime pay pursuant to the FLSA.[16] Plaintiffs allege that Defendants violated the FLSA in two distinct ways. First, Plaintiffs allege that Defendants designated a portion of the "straight-time rate" of pay for Tony Bridges and other similarly situated Absolute Lawn Care employees as a "bonus," which effectively was part of their hourly wage, but was not included when calculating their overtime pay rate.[17] Second, Plaintiffs allege that Defendants paid Juan Calderon and other similarly situated Absolute Lawn Care employees in cash, without deducting payroll taxes and never paying them overtime when they worked more than forty hours in a workweek.[18]

---

[13] *See* Rec. Docs. 1 & 13. Since the original complaint was filed, three other individuals who also worked for Absolute Lawn Care have joined the suit. *See* Rec. Docs. 5, 6, & 15.

[14] *See* Rec. Doc. 13 at 3.

[15] *Id.*

[16] *Id.* at 3.

[17] *Id.* at 3–4.

[18] *Id.* at 4.

Plaintiffs also allege that Defendants violated various Louisiana state laws and the FLSA by using an "Employee Points System" by which Defendants imposed upon some of the Plaintiffs fines and deducted from the "bonus" pay for "tardiness, absences, and alleged damage to tools, equipment, and customer property."[19] By this system, some of the Plaintiffs would have their bonus pay docked by one dollar per minute for tardiness and eliminated for unscheduled absences.[20] Furthermore, the Plaintiffs subject to the Points System would have to pay 50% of repair costs for reported damage to tools, equipment, and customer property and pay the full repair costs for unreported damage, even when the damage was not caused by the given Plaintiffs' negligent or willful action.[21] Plaintiffs' allege these fines and deductions effectively reduced the overtime compensation of Absolute Lawn Care employees like both Tony Bridges and Juan Calderon.[22] Plaintiffs allege they all made repeated demands for their alleged unpaid wages, which Defendants refused.[23]

## B. Procedural Background

The complaint in this matter was filed on January 19, 2016.[24] The complaint was brought on behalf of Plaintiffs and all others who were similarly situated.[25] On April 13, 2016, Plaintiffs amended their complaint as of right.[26] On May 31, 2016, Plaintiffs filed the instant motion to

---

[19] *Id.* at 4–5.

[20] *Id.* at 5.

[21] *Id.*

[22] *Id.*

[23] *Id.*

[24] Rec. Doc. 1.

[25] *Id.*

[26] Rec. Doc. 13.

conditionally certify two classes pursuant to the FLSA and two classes pursuant to Federal Rule of Civil Procedure 23.[27] On July 6, 2016, and upon initial review of the parties' briefs, the Court ordered supplemental briefing on whether the Court should determine the issue of whether Absolute Lawn Care is a "business enterprise engaged in commerce" under the FLSA as a threshold jurisdictional question before considering Plaintiffs' motion for conditional certification.[28] That same day, the Court granted Plaintiffs leave to file a second amended complaint.[29]

## II. Parties' Arguments

A.   *Plaintiffs' Initial Arguments in Support of Conditional Class Certification on FLSA Claims and Rule 23 Class Certification on State Law Claims*[30]

### 1.   Conditional Certification

Plaintiffs seek to conditionally certify two classes pursuant to § 216(b) of the FLSA, as well as certify two classes pursuant to Federal Rule of Civil Procedure 23 for various state law claims.[31] Specifically, plaintiff argues that the Court should conditionally certify the following classes of individuals pursuant to the FLSA:

> (1) All former and current employees whose purported "bonus" . . . was not included in their regular rate of pay for purposes of paying overtime under the FLSA and/or who did not receive or had deductions to their

---

[27] Rec. Doc. 20.

[28] Rec. Doc. 33.

[29] Rec. Doc. 32.

[30] Rec. Doc. 20-1

[31] Upon conditionally certifying the two classes, Plaintiffs ask that the Court do the following: "(1) order that judicial notice be sent to Putative Class Members; (2) approve the form and content of Plaintiffs' proposed judicial notices and consent form [attached as Rec. Doc. 20-4]; (4) order Defendants to produce to Plaintiffs' counsel the contact information for each Putative Class Member in a computer-readable form; (5) authorize a 90-day notice period for Putative Class Members to join the case; and (6) authorize notice to be sent via First Class Mail, e-mail, and telephone to the Putative Class Members." *See* Rec. Doc. 20-1 at 4. Plaintiffs argue that the nature and form of this requested relief accords with the requirements set forth by the Supreme Court in *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 172 (1989) and past practice of courts within this District. *See* Rec. Doc. 20-1 at 10.

attendance/productivity "bonus" which had the effect of reducing their overtime rate to less than 1 ½ times their regular rate of pay ("the Overtime Rate Collective"); and

(2) All former and current employees who ostensibly were classified as independent contractors . . . and were paid only their straight-time rate of pay . . . for hours worked over forty (40) in a workweek ("the Misclassification Collective").[32]

Plaintiffs further request that the Court approve the form and content of a proposed judicial notice attached to their motion, order Defendants to produce the contact information of all putative class members in a computer-readable form, allow for a 90-day notice period, and order that notice be sent via mail, email, and telephone.[33]

      Plaintiffs argue that, in the absence of clear guidance from the Fifth Circuit, courts in this District employ a two-stage certification procedure set forth in *Lusardi v. Xerox Corp.*[34] The first stage, which typically includes the conditional certification that Plaintiffs now seek, centers on the inquiry of whether notice should be sent to those similarly situated to Plaintiffs and is typically based only on the pleadings and any attached affidavits.[35] Plaintiffs argue that to achieve conditional certification, they need only meet the lenient standard of showing there are substantial allegations that the putative class members together were the victims of a single decision, plan, or policy of Defendants.[36] Plaintiffs further argue that the Court does not decide substantive issues on the merits at this stage.[37]

---

[32] Rec. Doc. 20-1 at 2.

[33] *Id.* at 4.

[34] *Id.* at 5 (citing 118 F.R.D. 351 (D.N.J. 1987)).

[35] *Id.*

[36] *Id.*

[37] *Id.* at 7–8 (citing *White v. Integrated Elec. Techs., Inc.*, Civ. A. Nos. 11-2186 & 12-359, 2013 WL 2903070 (E.D. La. Jun. 13, 2013) (Morgan, J.)).

Plaintiffs argue that they have met this standard as to both FLSA classes. As to the first proposed class, Plaintiffs assert that they have pointed to Defendants' "bonus" policy, which Plaintiffs allege resulted in members of that proposed class not receiving the full overtime pay they were entitled to.[38] Plaintiffs also point to the declarations of six former employees of Absolute Lawn Care confirming that the "bonus" applied to their regular rate of pay was not included in the calculation of their overtime rate of pay.[39] As to the second proposed FLSA class, Plaintiffs argue that their allegations, and an attached declaration of Juan Calderon, clearly identify a policy of Defendants to pay some of its employees in cash at a straight rate regardless of hours worked.[40]

### 2.      Rule 23 Certification

As to the Rule 23 classes, Plaintiffs seek to certify the following classes of individuals:

(1) All current and former employees who had a fine or deduction imposed on their wages pursuant to Defendants' Employee Points System or any other policy/procedure of Defendants which had the effect of reducing the amount of compensation owed to the employees ("Conversion and Deduction Plaintiffs"); and

(2) All former employees who have not received all wages owed to them after the termination of their employment within the time period prescribed by La. R.S. § 23:361 ("Wage Payment Plaintiffs")[41]

Plaintiffs argue that courts routinely certify both FLSA conditional classes and certify Rule 23 classes for state law claims at the same time.[42] Plaintiffs argue the two proposed classes meet Rule 23's various pre-requisites. Specifically, Plaintiffs assert Rule 23(a)'s numerosity requirement is met, because discovery so far supports that between seventy-nine and ninety

---

[38] *Id.* at 8.

[39] *Id.* at 8 (citing Rec. Doc. 20-3).

[40] *Id.* at 9

[41] *Id.* at 3.

[42] *Id.* at 11–12.

individuals have worked for Defendants and been subjected to unlawful compensation and deduction policies.[43] Plaintiffs further argue that the proposed classes meet Rule 23(a)'s commonality requirement, because common questions among Conversion and Deduction Plaintiffs include whether Defendants' "Points Policy" resulted in Defendants converting and unlawfully deducting wages owed to those putative class members and because there is a common question among the Wage Payment Plaintiffs as to whether Defendants failed to pay owed wages after Defendants terminated those Plaintiffs' employment.[44]

Plaintiffs also contend that Rule 23(a)'s typicality requirement is met because the putative class members were subject to the same or similar compensation policies, have similar types of damages, and have claims based on the same legal theories and similar factual circumstances.[45] Plaintiffs further argue that the two proposed classes satisfy Rule 23(a) by adequately and fairly protecting the interests of the putative class members, as the putative class representatives were long-term employees of Defendants and because counsel for the proposed class have adequate credentials and professional experience.[46] Finally, Plaintiffs assert that the two proposed classes meet Rule 23(b)(3)'s predominance and superiority requirements, because Plaintiffs' state-law claims contain issues of fact and law that are common to all members of the proposed class and because without the class action vehicle, it would be impractical if not impossible for the putative, low-income class members to seek recovery on their relatively small claims.[47]

---

[43] *Id.* at 12–13 (citing Rec. Doc. 20-5).

[44] *Id.*

[45] *Id.* at 14.

[46] *Id.* at 14–15.

[47] *Id.* at 15–16.

## B.    *Defendants' Initial Opposition*[48]

### 1.    Conditional Certification

In opposition to conditional certification of the proposed classes pursuant to the FLSA, Defendants argue that the FLSA is inapplicable in this case because Absolute Lawn Care is not a "business enterprise engaged in commerce" under the FLSA.[49] Defendants assert that Absolute Lawn Care can only be subject to the FLSA if its annual gross volume of sales meets or exceeds $500,000 and if it engages in interstate commerce, instead of purely local business.[50] Defendants point to *Garcia v. Green Leaf Lawn Maintenance*[51] and *Williams v. Henagan*[52] as cases supporting the conclusion that Absolute Lawn Care's lawn maintenance business falls outside the scope of the FLSA.[53] Defendants assert that Plaintiffs' allegations that Absolute Lawn Care's gross revenues exceed $500,000 and that its employees handled trucks and tools traveling in interstate commerce are not sufficient to establish that the Defendants' lawn care business falls in the purview of the FLSA. Defendants argue that without evidence that Plaintiffs regularly traveled outside of Louisiana in the scope of their work for Absolute Lawn Care, their FLSA claims cannot stand and conditional certification would be inappropriate.

Defendants further argue with specific regard to Plaintiffs' second Misclassification Collective that conditional certification is inappropriate because their allegations and affidavit only support the conclusion that Juan Calderon was paid in cash, without indicating that there were or

---

[48] Rec. Doc. 23

[49] *Id.* at 2–3.

[50] *Id.* at 2.

[51] No. 11-2936, 2012 WL 5966647 (S.D. Tex. Nov. 28, 2012).

[52] 595 F.3d 610, 621 (5th Cir. 2010).

[53] *Id.*

are similarly situated employees.[54] Employing an evaluation method previously used by the Court, Defendants argue that Plaintiffs have not established that there is a reasonable basis to conclude that multiple aggrieved individuals exist, let alone whether they are similarly situated to Plaintiff Juan Calderon or desire to opt in to the conditional class.[55]

Defendants further argue that because Plaintiffs have not alleged adequate facts describing the work of Juan Calderon or similarly situated workers, there is no way for the Court to conclude that the Misclassification Collective was actually comprised of employees as contemplated by the FLSA.[56]

### 2.    Rule 23 Certification

In opposition to Rule 23 certification, Defendants put forward three arguments. First, Defendants argue that Rule 23 certification is "procedurally irreconcilable" with conditional certification under the FLSA.[57] Defendant points to non-binding decisions it contends support the conclusion that the two forms of certification in the same action frustrates the intent of the FLSA's opt-in requirement.[58] Defendants point to Plaintiffs' proposed notice and consent forms, which Defendants argue indicate putative class members must opt in or else risk losing the right to participate in the lawsuit.[59] Defendants further argue that the procedure of Rule 23 certification is significantly more stringent than conditional certification and that the pleadings and affidavits

---

[54] *Id.* at 4.

[55] *Id.* at 4–6.

[56] *Id.* at 6.

[57] *Id.* at 7.

[58] *Id.* (citing, *e.g.*, *De Asencio v. Tyson Foods,* 342 F.3d 301, 307–08 (3d Cir. 2003); *Jackson v. City of San Antonio*, 220 F.R.D. 55, 58 (W.D. Tex. 2003)).

[59] *Id.* at 8.

provided by Plaintiffs to date do not yet make it possible to determine if certification is appropriate.[60]

Second, Defendants argue that the Court should decline to exercise supplemental jurisdiction over Plaintiffs' state-law claims, thereby effectively making the Rule 23 certification issue moot.[61] Defendants argue that plaintiffs' state law claims predominate over their FLSA claims, noting there are four distinct state law causes of action stated compared to just one FLSA claim and also asserting that the fact-intensive nature of Plaintiffs' illegal deduction claims will "dominate the proceedings."[62]

Third and finally, Defendants argue that Plaintiffs have not satisfied the requirements of Rule 23(a) and Rule 23(b)(3).[63] Defendants assert that the Rule 23(a) numerosity figures put forth by Plaintiffs should be considered in context with other important numerosity figures, such as the location of the putative class members, the nature of the action, and the ease with which members could be identified.[64] Defendants assert that the same interrogatory responses that indicate there are potentially seventy-nine to ninety putative class members also indicate that almost all of the putative class members reside in Orleans and Jefferson parish and are easily identified.[65]

Furthermore, Defendants argue that Plaintiffs have not satisfied Rule 23(a)'s commonality and typicality requirement, as the Court will have to determine the reasonableness of wage

---

[60] *Id.* at 8–9.

[61] *Id.* at 9–10.

[62] *Id.* at 10.

[63] *Id.* at 11–13.

[64] *Id.* (citing *Zeidman v. J. Ray McDermott & Co., Inc.*, 651 F.2d 1030, 1038 (5th Cir. 1981).

[65] *Id.*

deductions based on the actions of each individual plaintiff.[66] Defendants also argue that the pleadings and affidavits by some named Plaintiffs do not adequately establish that they will fairly or adequately represent absent class members.[67] Finally, Defendants argue that Plaintiffs have failed to satisfy Rule 23(b)(3)'s predominance and superiority requirements, because the facts of each class members' individual claims will predominate over common questions of the proposed class.[68]

Defendants do not address Plaintiffs' request for approval of their proposed judicial notice, a computer-readable document listing all putative class members, a 90-day notice period, and court order for the proposed judicial notice to be sent by mail, email, and telephone.

## C.   *Plaintiffs' Reply*[69]

In their reply to Defendants' arguments regarding FLSA conditional certification, Plaintiffs argue generally that Defendants improperly put forward merit-based arguments that are not relevant to the issue of conditional certification.[70] Furthermore, Plaintiffs argue that at this early stage in the litigation, their allegations that Plaintiffs used goods manufactured in interstate commerce should be sufficient to merit conditional certification, pointing to a recent Southern District of Florida case and publications by the Department of Labor that indicate that it has previously imposed fines against landscaping companies for violations of the FLSA.[71]

---

[66] *Id.*

[67] *Id.*

[68] *Id.*

[69] Rec. Doc. 26.

[70] *Id.* at 1–2.

[71] *Id.* at 2 (citing *Bautista Hernandez v. Tadala's Nursery, Inc.*, 34 F. Supp. 3d 1229, 1240 (S.D. Fla. 2014)); *id.* at 2 n.1 (citing, *e.g.*, *Cyrilla Landscaping pays more than $78,000 in back wages, liquidated damages following US Labor Department investigation*, https://www.dol.gov/whd/media/press/whdpressVB3.asp?pressdoc=Northeast/20130221.xml).

With specific regard to the Misclassification Collective, Plaintiffs argue they have identified in their cited declarations several other individuals who could fit in the conditional class. Finally, Plaintiffs assert Defendants' merit-based challenge as to the employment status of the Misclassification Collective is premature and also fails to account for the declaration of Juan Calderon, which specifically addresses the "economic realities" of his work with Absolute Lawn Care, which indicate he was an employee and not an independent contractor.[72]

As to Rule 23 certification, Plaintiffs assert that the Third Circuit case Defendants cite to support their "procedurally irreconcilable" argument has been limited to its facts by subsequent Third Circuit decisions and that all other circuit courts of appeal have rejected the argument that FLSA conditional certification and Rule 23 certification are irreconcilable.[73] Addressing Defendants' supplemental jurisdiction argument, Plaintiffs argue the Seventh Circuit has clearly stated that courts should decline to exercise supplemental jurisdiction in only unusual cases.[74] Plaintiffs argue that, at a minimum, the Court should certify a class of the Conversion and Deduction Plaintiffs at least to the deductions for tardiness and absences and for fines imposed without regard to the worker's negligence.[75]

**D.     *Defendants' Response to Court Briefing Order on FLSA Conditional Certification*[76]**

In response to the Court's July 6, 2016, supplemental briefing order, Defendants argue that the Court should decide threshold FLSA coverage issues before deciding Plaintiffs' motion for

---

[72] *Id.* at 3.

[73] *Id.* at 4–5.

[74] *Id.* at 5.

[75] *Id.* at 6

[76] Rec. Doc. 39.

conditional certification.[77] Defendants contend that while there is no Fifth Circuit precedent on the issue, the Court has broad discretion in deciding conditional certification issues.[78] Defendants argue that by deciding threshold coverage questions now, the Court will "refrain from stirring up unwarranted litigation."[79] Defendants argue that, despite the lenient standard for conditional certification, this Court has previously emphasized that conditional certification is not automatic and that the Court may properly engage in factual inquiries to determine whether conditional certification would lead to an efficient resolution of the disputes between the parties.[80] Defendants argue that district courts routinely deny conditional certification based on factual findings that employees were not similarly situated.[81]

### E. *Plaintiffs' Response to Court Briefing Order on FLSA Conditional Certification*[82]

In response to the Court's supplemental briefing order, Plaintiffs argue that recent decisions in this District demonstrate that the Court should refrain from deciding substantive issues regarding FLSA coverage at this stage.[83] Addressing the *Williams v. Henagen* decision of the Fifth Circuit cited to by the Court in its briefing order, Plaintiffs argue that the case regards only individual, not enterprise FLSA coverage.[84] Because Plaintiffs have alleged both theories of FLSA coverage,

---

[77] *Id.*

[78] *Id.*

[79] *Id.* (citing *Lima v. Int'l Catastrophe Solutions, Inc.*, 493 F. Supp. 2d 793, 799 (E.D. La. 2007) (quoting *Lentz v. Spanky's Restaurant II, Inc.*, 491 F. Supp. 2d 663, 667–68 (N.D. Tex. 2007)). In plain error, Defendants cited to *Lentz* as if it were an opinion of the Fifth Circuit. The Court cautions Defendants to carefully compose its citations and not risk supplying the Court with misleading statements of authority.

[80] *Id.* (citing *Crowley v. Paint & Body Experts of Slidell, Inc.*, Civ. A. No. 14-172, 2014 WL 2506519 (E.D. La. June 3, 2014) (Brown, J.)).

[81] *Id.*

[82] Rec. Doc. 43.

[83] *Id.* (citing *Leon v. Diversified Concrete LLC*, Civ. A. No. 15-6301 (E.D. La. May 13, 2016) (Barbier, J.)).

[84] *Id.*

Plaintiffs argue *Williams* is of limited utility.[85] Furthermore, Plaintiffs argue that district court decisions support a finding that Absolute Lawn Care's use of tools and vehicles is enough for it to qualify as a business enterprise engaged in commerce for the purposes of the FLSA.[86]

**F.    *Plaintiffs' Supplemental Memorandum In Support of FLSA Conditional Certification and Rule 23 Class Certification*[87]**

Plaintiffs filed a supplemental memorandum on FLSA conditional certification and Rule 23 class certification to address three points. First, Plaintiffs note that their second amended complaint—which was filed after their initial motion for FLSA conditional certification—alleged additional facts about plaintiffs' rate of pay.[88] Specifically, Plaintiffs note that the complaint alleges that plaintiff Tony Bridges received commission payments that were reflected on his pay stubs and argue that the issue of commission pay should be part of the rate-of-pay claims of the "Bridges Plaintiffs."[89]

Second, Plaintiffs supplement their arguments regarding adequacy of counsel for the proposed Rule 23 classes, contending that recently enrolled counsel, Michael T. Tusa, Jr., adds to the strength of their representation.[90] Finally, Plaintiffs note that while their initial complaint

---

[85] *Id.* at 3.

[86] *Id.* (citing *White v. NTC Transp., Inc.*, Civ. A. No. 11-007 (N.D. Miss. Sept. 27, 2013); *Polycarpe v. E&S Landscaping Serv.*, 821 F. Supp. 2d 1302, 1307 (S.D. Fla. 2011)).

[87] Rec. Doc. 46.

[88] *Id.* at 1.

[89] *Id.* at 1–3. Plaintiffs are inconsistent in how they refer to the proposed conditional classes, referring to "Bridges Plaintiffs" with regard to those employees not paid adequate overtime in their complaints, and the "Overtime Rate Collective" to refer to employees not paid adequate overtime in their motion for conditional for certification. *See* Rec. Doc. 20-1 at 2 (referring to an "overtime rate collective"); Rec. Docs. 13 at 4 & 32 at 10–11 (referring to "Bridges Plaintiffs" with regard to those employees not paid adequate overtime). In their supplemental memorandum on the issue of conditional certification, plaintiffs refer to the Bridges Plaintiffs and make no reference to the Overtime Rate Collective. *See* Rec. Doc. 46 at 1–3. While the Court is willing to overlook Plaintiffs inconsistent use of referential terminology at this time, it would behoove Plaintiffs, the Court, and all parties to this litigation to employ consistent terminology from this point forward.

[90] *Id.* at 3.

ambiguously stated a Rule 23 class action claim for violations of Louisiana's Wage Payment Act, their second amended complaint makes clear that their Wage Payment Act claim is brought under Rule 23.[91]

## G.    Plaintiffs' Motion for Limited Discovery[92]

Referencing the Court's July 6, 2016, supplemental briefing order on the issue of Absolute Lawn Care's status as a business enterprise engaged in commerce under the FLSA, Plaintiffs filed a motion for limited discovery. Plaintiffs argue that, while the Court should not determine the substantive issue of whether Absolute Lawn Care is covered by the FLSA at the conditional certification stage, the Court should allow limited discovery on the issue if it determines that the coverage issue is pertinent to Plaintiffs' conditional certification motion.[93] Specifically, Plaintiffs request that the Court order limited discovery on the types of tools Absolute Lawn Care provides to its employees, the types of sales it conducts, and information on its annual revenues.[94]

## H.    Defendants' Opposition to Plaintiffs' Motion for Limited Discovery[95]

In opposition to Plaintiffs' motion for limited discovery, Defendants argue that Plaintiffs misconstrue the Court's supplemental briefing order, which was meant to require additional briefing on the law, not development of the facts of the case.[96] Defendants argue that they would be prejudiced by the Court allowing in new evidence and then deciding the conditional certification

---

[91] *Id.* at 4.

[92] Rec. Doc. 34.

[93] Rec. Doc. 34-1

[94] *Id.*

[95] Rec. Doc. 38.

[96] *Id.*

issue in short order and without giving Defendants ample opportunity to respond.[97]

*I.*     ***Plaintiffs' Reply in Support of Limited Discovery*[98]**

Replying to Defendants' opposition of limited discovery, Plaintiffs argue that it would be unfair for the Court to rule on Absolute Lawn Care's status as an enterprise engaged in commerce under the FLSA, noting that information regarding Absolute Lawn Care's business operations is largely in Defendants' possession, and Defendants have not been forthcoming with evidence establishing that Absolute Lawn Care is not an enterprise covered by the FLSA.

## III. Legal Standards

*A.*     ***Standard for Conditional Certification***

The FLSA sets forth requirements for minimum wage, overtime pay, and record keeping for certain employees who are not exempt because they hold executive, administrative, or professional positions.[99] The FLSA also creates a private right of action for employees when these rights are violated.[100] Under § 216(b) of the FLSA, one or more employees can pursue a collective action in a representative capacity on behalf of similarly situated employees.[101] There are two requirements to proceed as a representative action: (1) all plaintiffs must be "similarly situated" and (2) a plaintiff must consent in writing to take part in the suit. This latter requirement means

---

[97] *Id.* at 2.

[98] Rec. Doc. 42.

[99] 29 U.S.C. §§ 206(a)(1), 207(a)(1), 213(a)(1). The employer bears the burden of proving the applicability of an exemption. *Corning Glass Works v. Brennan*, 417 U.S. 188, 197 (1974).

[100] 29 U.S.C. § 216(b).

[101] "An action to recover the liability . . . may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and on behalf of himself or themselves and other employees similarly situated." *Id.*

that a representative action follows an "opt-in" rather than an "opt-out" procedure.[102]

The FLSA does not define the requirements for employees to be deemed "similarly situated." Instead, a two-step method is routinely utilized, which was originally articulated in *Lusardi v. Xerox Corporation*[103] and described in detail by the Fifth Circuit in *Mooney v. Aramco Services*.[104] Under this approach, a court first determines at the "notice stage" whether notice should be given to potential members of the collective action, and this determination is usually made on the basis of "only . . . the pleadings and any affidavits."[105] Because the Court typically has little evidence at this stage, the determination of conditional certification "is made using a fairly lenient standard, and typically results in 'conditional certification' of a representative class."[106] Generally, courts do not require more than "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan" and only a modest factual basis is required.[107] Although this is a lenient standard, general allegations that the employer violated the FLSA are insufficient.[108]

At the notice stage, the burden is on the plaintiff to demonstrate that "(1) there is a reasonable basis for crediting the assertion that aggrieved individuals exist; (2) those aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses

---

[102] *See Tyson Foods, Inc. v. Bouaphakeo*, 136 S.Ct. 1036, 1043 (2016); s*ee also Mooney v. Aramco Serv. Co.*, 54 F.3d 1207, 1212 (5th Cir. 1995), *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003).

[103] 118 F.R.D. 351 (D.N.J. 1987).

[104] 54 F.3d at 1213–14.

[105] *See id.*

[106] *Id.* at 1214.

[107] *Id.* at 1214 n.8 (quoting *Sperling v. Hoffman–LaRoche, Inc.*, 118 F.R.D. 392, 407 (D.N.J. 1988)).

[108] *Chapman v. LHC Group, Inc.*, 126 F. Supp. 3d 711, 720 (E.D. La. 2015) (Brown, J.) (citing *Melson v. Directech Southwest, Inc.*, Civ. A. No. 07–1087, 2008 WL 258988, at *4 (E.D. La. Jun. 25, 2008) (Feldman, J.)).

asserted; and (3) those individuals want to opt in to the lawsuit."[109] The burden to show that plaintiffs are similarly situated rests on the plaintiff,[110] but "[a] plaintiff need only demonstrate a reasonable basis for the allegation that a class of similarly situated persons may exist."[111] Plaintiffs need not be identically situated,[112] and even plaintiffs who operate in different geographical locations and under different managers and supervisors may be deemed similarly situated in some circumstances, such as when they share similar job titles and responsibilities.[113] "Whether at the notice stage or on later review, collective action certification is not precluded by the fact that the putative plaintiffs performed various jobs in differing departments and locations."[114] A plaintiff must do more than show the mere existence of other similarly situated persons, because "there is no guarantee that those persons will actually seek to join the lawsuit."[115] Only those employees

---

[109] *Lang v. DirecTV, Inc.*, No. 10–1085, 2011 WL 6934607, at *4 (E.D. La. Dec. 30, 2011) (Brown, J.); *see also Morales v. Thang Hung Corp.*, No. 08–2795, 2009 WL 2524601, at *2 (S.D. Tex. Aug. 14, 2009); *Hickson v. U.S. Postal Serv.*, No. 09–83, 2010 WL 3835887, at *5, 2010 U.S. Dist. LEXIS 104112, at *18 (E.D. Tex., July 22, 2010).

[110] *England v. New Century Fin. Corp.*, 370 F. Supp. 2d 504, 507 (M.D. La. 2005).

[111] *Lima v. Int'l Catastrophe Solutions, Inc.*, 493 F. Supp. 2d 793, 798 (E.D. La. 2007) (emphasis added) (Fallon, J.).

[112] *Crain v. Helmerich & Payne Int'l Drilling Co.*, Civ. A. No. 92–0043, 1992 WL 91946 (E.D. La. Apr. 16, 1992).

[113] *Kuperman v. ICF Int'l*, Civ. A. No. 08–565, 2008 WL 4809167, at *7–8, (E.D. La. Oct. 31, 2008) (Barbier, J.).

[114] *Donohue v. Francis Serv., Inc.*, No. 04–170, 2004 WL 1161366, at *2 (E.D. La. May 24, 2004) (citations omitted) (Barbier, J.) (granting conditional certification where plaintiffs alleged a common policy of employer denying employees payment and finding affidavits and other documentary evidence sufficient to support the allegations). "The Court rejects defendants' argument that such a class is problematic because it includes individuals from various positions, locations, etc.; the law is plain that that does not undermine the 'similarly situated' requirement." *Id.* at *3.

[115] *Tolentino v. C & J Spec–Rent Serv., Inc.*, 716 F. Supp. 2d 642, 647 (S.D. Tex. 2010) (citing *Ali v. Sugarland Petroleum*, Civ. A. No. 09–cv–0170, 2009 WL 5173508, at *2 (S.D. Tex. Dec. 22, 2009). *See also H & R Block, Ltd. v. Housden*, 186 F.R.D. 399, 400 (E.D. Tex. 1999) ("[A]lthough the standard for satisfying the first step is lenient, . . . the court still requires at least substantial allegations that the putative class members were together victims of a single decision, policy or plan") (internal quotation omitted)).

who affirmatively "opt-in" to the suit are bound by a collective action under the FLSA.[116]

      If conditional certification is granted, the case then proceeds through discovery as a class action to the "merits stage," at which time the defendants may move for decertification.[117] At that time, a more stringent approach governs and *Lusardi* applies a three-factor test, considering: (1) the extent to which employment settings are similar or disparate; (2) the extent to which any of the employer's defenses are common or individuated; and (3) fairness and procedural concerns.[118] The court then makes "a factual determination on the similarly situated question,"[119] either allowing the representative action "to proceed to trial" or decertifying the class and dismissing without prejudice the claims of opt-in plaintiffs.[120] Generally, the matter is less appropriate for certification when plaintiffs' job experiences are more dissimilar and when the employer's defenses are more individuated. Although the Fifth Circuit has not specifically endorsed decertification in this manner,[121] the Fifth Circuit has affirmed a district court's decertification decision based on the use of the *Lusardi* approach.[122] This approach "is consistent with the Fifth Circuit's statements that there is a fundamental, irreconcilable difference between the class action described by Rule 23 of

---

[116] 29 U.S.C. § 216(b) ("[N]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.").

[117] *Mooney*, 54 F.3d at 1214.

[118] *Kuperman*, 2008 WL 4809167 at *5 (quoting *Johnson v. Big Lots Stores, Inc.*, 561 F. Supp. 2d 567, 573 (E.D. La. 2008) (Vance, J.) (conditional certification the majority approach)).

[119] *Mooney*, 54 F.3d at 1214.

[120] *Id.*

[121] *Id.* at 1216 ("In so holding we specifically do not endorse the methodology employed by the district court, and do not sanction any particular methodology. We simply need not decide the appropriate methodology under these facts, and therefore leave that inquiry for another day.").

[122] *Id.* at 1215–16.

the Federal Rules of Civil Procedure and the collective action provided by the FLSA."[123]

### B.     Standard for Rule 23 Certification

Class actions not brought pursuant to the FLSA are governed by Rule 23 of the Federal Rules of Civil Procedure, and Plaintiffs need not first establish the merits of their case in order to gain certification.[124] Instead, in order to be certified, a proposed class must first meet the initial requirements established by Federal Rule of Civil Procedure 23(a): (1) numerosity of parties; (2) commonality of legal and factual issues; (3) typicality of the claims and defenses of the class representatives; and (4) adequacy of the representation by the class representatives.[125]

In addition to satisfying the requirements of Rule 23(a), the proposed class must also satisfy at least one of the three requirements listed in Rule 23(b), which sets forth the types of actions that may be maintained as a class action. As here, when plaintiffs seek certification pursuant to Rule 23(b)(3), "the court [must] find[ ] that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."[126] Rule 23(b)(3) contains a list of "matters pertinent" to the findings of predominance and superiority:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.[127]

---

[123] *Smith v. ServiceMaster Holding Corp.*, No. 10–444, 2011 WL 4591088 (M.D. La. Sept. 30, 2011) (noting the important difference between opt-in and opt-out class actions) (citing *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 916 (5th Cir. 2008)). *See also LaChapelle v. Owens–Illinois, Inc.*, 513 F.2d 286, 288 (5th Cir. 1975).

[124] *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974) (citing *Miller v. Mackey Int'l*, 452 F.2d 424, 427 (5th Cir. 1971)).

[125] Fed. R. Civ. P. 23(a); *see also Wal–Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2550 (2011).

[126] Fed. R. Civ. P. 23(b)(3).

[127] *Id.*

In its recent decision in *Tyson Foods, Inc. v. Bouaphakeo*, the Supreme Court further elaborated on the standard for satisfying Rule 23(b)(3).[128] The Court noted that the predominance inquiry "calls upon courts to give careful scrutiny to the relation between common and individual questions in a case."[129] The Court explained the differences between the two sorts of questions, noting that "[a]n individual question is one where members of a proposed class will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member to make a prima facie showing or the issue is susceptible to generalized, class-wide proof."[130] The Court further explained that "the predominance inquiry asks whether the common, aggregation-enabling issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues."[131] When a court determines that "one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members."[132]

As the parties seeking certification, the burden to show that all of the requirements for class certification have been met rests on the plaintiffs.[133] Then, the decision of whether to certify a class lies soundly within the district court's discretion; however, the Court "must conduct a rigorous

---

[128] *Tyson Foods*, 136 S. Ct. at 1045.

[129] *Id.*

[130] *Id.* (internal quotations omitted).

[131] *Id.* (internal quotations omitted).

[132] *Id.* (internal quotation omitted).

[133] *See Unger v. Amedisys, Inc.*, 401 F.3d 316, 320 (5th Cir. 2005).

analysis of the [R]ule 23 prerequisites before certifying a class."[134] Further, "Rule 23 requires the Court to find, not merely assume, the facts favoring class certification."[135]

## IV. Law and Analysis

### A.      Conditional Class Certification on FLSA Claims

The Court begins its analysis by addressing the arguably threshold issue identified by Defendants regarding whether Absolute Lawn Care is a business enterprise engaged in commerce pursuant to the FLSA and thereby subject to FLSA. As indicated by the Court's supplemental briefing order, the Court found it appropriate to determine whether Plaintiffs, at the conditional certification juncture, have an obligation to adequately establish that Defendants may be properly subject to an FLSA action, given that the operative complaint makes only general statements that Absolute Lawn Care is a business enterprise engaged in commerce and that the affidavits provided by Plaintiffs do not address the topic.[136] However, despite the fact that Defendants have asserted that the annual revenue of Absolute Lawn Care is under $500,000[137] and that the nature of the business is purely local, Defendants have not filed a motion to dismiss or motion for summary judgment and instead waited more than two months after initially filing an answer to raise this threshold issue. Defendants seemingly have exclusive control of the information needed for the Court to decide the issue and have failed to point to any case law indicating that courts may properly make a merits determination on this issue at the initial, notice stage of conditional

---

[134] *Castano v. Amer. Tobacco Co.*, 84 F.3d 734, 740 (5th Cir. 1996).

[135] *Unger*, 401 F.3d at 321 (citing Fed. R. Civ. P. 23(b)(3)).

[136] *Williams*, 595 F.2d at 621; *Sobrinio v. Med. Ctr. Visitor's Lodge*, 474 F.3d 828, 829 (5th Cir. 2007) (citing *Mitchell v. H.B. Zachry Co.*, 362 U.S. 310 (1960)).

[137] Rec. Doc. 37 at 1.

certification.[138] Indeed the Court is persuaded by recent decisions within this District concluding that the issue of whether a defendant is a business enterprise engaged in commerce is not pertinent to conditional certification analysis.[139] The Court will grant conditional certification and leave the coverage issue to be addressed after the parties have had an opportunity to engage in discovery on the issue.

Leaving the FLSA coverage later to be decided after some discovery has taken place, the Court now turns to whether Plaintiffs have met the requirements for having the Court conditional certify its two proposed FLSA classes. Under the lenient standard of *Lusardi* and at the notice, not merits, stage, plaintiffs' pleadings and affidavits provide substantial allegations that the two sets of putative class members were together the victims of Defendants' policies regarding overtime compensation and independent contractor classification respectively. As an initial matter, the Court rejects Defendants' argument, as it has before,[140] that Plaintiffs have not shown that other employees identified by Plaintiffs desire to be in the litigation. Beyond not according with Fifth Circuit precedent, the argument apparently misses the purposes of the FLSA's opt-in provisions— giving similarly situated putative class members the option to join the litigation, if they so desire.

As to the Overtime Rate Collective, Plaintiffs have supplied a reasonable basis for concluding that Defendants' alleged company-wide "Employee Points System" applied to the

---

[138] Indeed, none of the cases cited to by Defendants support the conclusion that the FLSA coverage issue is decided at any stage other than summary judgment. *Williams*, 595 F.2d at 621; *Sobrinio*, 474 F.3d at 829.

[138] Rec. Doc. 37 at 1.

[139] *See Leon v. Diversified Concrete LLC*, No. 15-6301, 2016 WL 2825073, at *4 (E.D. La. May 13, 2016) (Barbier, J.) (quoting *Lang v. DirecTV, Inc.*, No. 10-1085, 2011 WL 6934607, at *3 (E.D. La. Dec. 30, 2011) (Brown, J.)) (With regards to the issue of whether defendant was an enterprise engaged in interstate commerce, "[t]he Court 'need not decide at this juncture the exact nature of the employment relationship here'").

[140] *Rendon v. Global Tech. Sol., LLC*, No. 15-242, 2015 WL 8042169, at *8 (E.D. La. Dec. 4, 2015) (Brown, J.).

compensation rate of more employees than just the numerous named plaintiffs in this case. Furthermore, Plaintiffs have come forward with six sworn declarations of former Absolute Lawn Care employees who assert that they did not receive due overtime pay for hours worked over 40, because the overtime rate of pay did not take into account the purported "bonus" for attendance and hours worked in a week.[141] Each declaration states that the given declarant is aware of other employees of Absolute Lawn Care who similarly complained of not receiving their due overtime because of the "bonus" issue, with some declarations identifying specific employees by first name.[142]

Plaintiffs' support of conditional certification of the Misclassification Collective is less robust than its support for the Overtime Rate Collection. Plaintiffs have come forward with the sworn declaration of Juan Calderon, which states that while he worked for Absolute Lawn Care, he was paid a straight rate of pay in cash regardless of whether he worked over 40 hours in a work week, with no taxes withheld by Absolute Lawn Care.[143] Mr. Calderon asserts that he has had conversations with other employees of Absolute Lawn Care who worked without ever receiving overtime pay for hours worked beyond 40-per week, identifying three first names.[144] The declaration of Tony Bridges, while not asserting that he is a member of the Misclassification Collective, does assert that he worked with roughly ten Hispanic workers who received a straight rate of pay regardless of hours worked.[145] Defendants argue that Plaintiffs must do more to show that the putative members of the Misclassification Collective were actually not independent

---

[141] *See* Rec. Doc. 20-3 at 1–14 & 17–19.

[142] *Id.*

[143] *See* Rec. Doc. 20-3 at 15.

[144] *Id.* at 15–16.

[145] Rec. Doc. 20-3 at 3.

contractors; however, they cite only to cases going to the underlying merits of a plaintiffs' FLSA case, not notice-stage conditional certification.[146] At this initial notice stage, Plaintiffs have provided a reasonable basis to conclude that more of Defendants' employees than just Calderon did not receive any overtime compensation due to being classified as independent contractors.

The Court notes that, in addition to seeking conditional certification of its two proposed classes, Plaintiffs ask the Court to approve their proposed notice and consent to sue forms, approve a 90-day notice period, order Defendants to send Plaintiffs a computer-readable list of all putative FLSA class members, and order transmission of the notice.[147] Defendants did not state any objection to these requests in their memorandum; however, the Court finds it appropriate to follow its past practice and order the parties to confer shortly after this Order and Reasons is signed to jointly discuss the appropriate form and scope of judicial notice to the FLSA class members.[148] The Court notes its doubt that a 90-day notice period is necessary in this case, given the proximity of most all of the putative class members.[149] The Court expects counsel for the parties to confer in good faith in an attempt to come forward with a joint proposal for judicial notice.

**B.      *Rule 23 Class Certification on State Law Claims***

Before addressing Rule 23 certification, the Court addresses, and rejects, Defendants' argument that supplemental jurisdiction over Plaintiffs' state-law claims is not appropriate. Plaintiffs' FLSA and state-law claims are clearly related to the basic issue of Defendants' compensation to Plaintiffs, and the Court will not conclude at this point that Plaintiffs' state-law

---

[146] *See Hopkins v. Cornerstone Amer.*, 545 F.3d 338 (5th Cir. 2008); *Thibault v. Bellsouth Telecomm., Inc.*, 612 F.3d 843, 848 (5th Cir. 2010).

[147] *See* Rec. Doc. 20-4.

[148] *See Lang*, 2011 WL 6934607 at *10.

[149] Rec. Doc. 20-5 at 3–13; *see also Marshall v. Louisiana*, No. 15-1128, 2016 WL 279003, at *12 (E.D. La. Jan. 22, 2016) (Brown, J.).

claims constitute "the real body" of the case.[150] Furthermore, the Court notes that, even were the Court to conclude that the state-law claims substantially predominated the action, the Court would have discretion to retain subject matter jurisdiction over all related claims.[151] As such, the Court now turns to Plaintiffs' request for Rule 23 class certification.

Unlike the lenient standards for FLSA conditional certification, Rule 23 imposes significantly more stringent requirements that must be satisfied before a court may certify a putative class. In addition to arguing that Plaintiff's proposed Rule 23 classes do not meet Rule 23's certification requirements, Defendants also argue that FLSA conditional certification and Rule 23 certification are fundamentally incompatible and that the Court should decline to exercise supplemental jurisdiction. Because Defendants' incompatibility argument would be moot should the Court otherwise deny Rule 23 certification, the Court begins by determining whether Plaintiffs have satisfied Rule 23's more stringent certification requirements.

Unlike the two FLSA conditional classes, the Court finds that Plaintiffs have not satisfied Rule 23's requirements for class certification. The Court is not satisfied that Plaintiffs have met either Rule 23(a)(1)'s numerosity requirement or Rule 23(b)(3)'s superiority requirement. Plaintiffs assert that there are between 79 and 90 persons who have worked for Defendants and have been subjected to Defendants' alleged violations of Louisiana state law. Plaintiffs support the assertion by reference to Defendants' interrogatory responses, which identify 79 such employees and indicates that "approximately 10 persons have performed services as Landscape Crew Leader."[152] A review of the identified employees indicates that 76 of the 79 live within

---

[150] *See* 28 U.S.C. § 1367(c); *see also United Mine Workers of America v. Gibbs*, 383 U.S. 715, 727 (1966).

[151] *Id.*

[152] Rec. Doc. 20-5 at 3–13.

approximately 20 miles of downtown New Orleans and the other three live within about 20 miles of each other in central Michigan.[153]

Plaintiffs cite to non-binding and mostly dated authority to support the conclusion that any proposed class of more than 40 individuals meets Rule 23(a)(1).[154] Defendants correctly rebut Plaintiffs' assertion about Rule 23(a)(1)'s requirements, noting clear Fifth Circuit authority that guides courts to consider more than just the estimated number of likely class members, but also consider the "geographical dispersion of the class, the ease with which class members may be identified, the nature of the action, and the size of each plaintiff's claim."[155] Indeed, the Fifth Circuit has recently reaffirmed that "the number of members in a proposed class is not determinative of whether joinder is impracticable."[156]

In light of binding Fifth Circuit authority and upon review of the record, the Court cannot conclude that Plaintiffs' proposed Rule 23 members are so numerous that joinder is impracticable. Indeed, while the Court does not find it necessary to wade into the issue of whether the FLSA's "opt-in" classes are incompatible with Rule 23's "opt-out" classes, the Court notes that the FLSA's notice and consent procedures will significantly aid Plaintiffs in seeking joinder of all possibly aggrieved putative class members. And because it appears that joinder is not impracticable and

---

[153] *See id.* The three identified employees living outside metropolitan New Orleans all appear to live in Harrison and Farwell, Michigan. *See id.* at 10–11.

[154] Indeed, the Court notes that Plaintiffs' memorandum seemingly quotes a 2011 Third Circuit decision to support its assertion that any class with more than 40 members meets Rule 23(a)(1), otherwise citing only non-binding decisions predating 1985. *See* Rec. Doc. 20-1 at 12. The Third Circuit decision, *Sullivan v. DB Investments, Inc.* contains no quote supporting Plaintiffs' assertion. Furthermore, Plaintiffs' argument does exactly what the Fifth Circuit has cautioned against—"rely[] on a case as a precedent simply because it involves a class of a particular size"). *See In re TWL Corp.*, 712 F.3d 886, 894 (5th Cir. 2013) (citing 7A Charles Alan Wright et al., *Federal Practice and Procedure* § 1762 (3d ed. 2005).

[155] *See Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1038 (5th Cir. 1981).

[156] *In re TWL Corp.*, 712 F.3d at 894 (citing *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999)). *In re TWL Corp.* reaffirms *Zeidman*'s Rule 23(a)(1) analytical framework. *See id.*

that the overwhelming majority of possible plaintiffs in this action live within miles of this District's courthouse, the Court cannot conclude at this time that a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy."[157]

Should discovery reveal that the number, location, or situation of the plaintiffs is markedly different than what the record currently reflects, the Court would entertain a renewed motion for Rule 23 certification. At this time, however, the Court cannot conclude that Rule 23 certification for any of Plaintiffs' proposed classes is appropriate.

## V. Conclusion

**IT IS HEREBY ORDERED** that Plaintiffs' "Motion for Conditional Certification and Class Certification"[158] is **GRANTED IN PART** and **DENIED IN PART** as follows.

**IT IS FURTHER ORDERED** that Notice shall be sent to: "All former and current employees [of Absolute Lawn Care] whose purported "bonus" . . . was not included in their regular rate of pay for purposes of paying overtime under the FLSA and/or who did not receive or had deductions to their attendance/productivity "bonus" which had the effect of reducing their overtime rate to less than 1 ½ times their regular rate of pay ("the Overtime Rate Collective")."[159]

**IT IS FURTHER ORDERED** that Notice shall be sent to: "All former and current employees [of Absolute Lawn Care] who ostensibly were classified as independent contractors . . . and were paid only their straight-time rate of pay . . . for hours worked over forty (40) in a

---

[157] Fed. R. Civ. P. 23 (b)(3). The Court acknowledges that Defendants further argue that Plaintiffs have failed to demonstrate commonality and typicality of claims, because the nature of fines, deductions, and termination pay all will be necessarily individualized and fact-intensive inquiries. *See* Rec. Doc. 23 at 12. Given that the Court has found other grounds on which to deny certification, the Court does not find it necessary to address those arguments at this time.

[158] Rec. Doc. 20.

[159] Rec. Doc. 20-1 at 2.

workweek ("the Misclassification Collective").[160]

**IT IS FURTHER ORDERED** that the parties shall meet and confer regarding the form and content of the proposed notice, in keeping with the Court's ruling herein. The parties are ordered to submit a joint proposed notice and joint proposed notice period within 10 days of the date of this Order and Reasons. If the parties are unable to agree on a proposed notice, the parties shall submit (1) their proposed notice and notice period and (2) their objections, with supporting authority, to the opposing party's notice and/or consent form, within 10 days of this Order and Reasons, and request an expedited status conference on the matter.

**IT IS FURTHER ORDERED** that Plaintiffs' request for certification of two putative classes asserting state law claims is denied without prejudice to Plaintiff's right to re-urge a Rule 23 certification motion, if appropriate and in keeping with the Court's ruling herein.

**IT IS FURTHER ORDERED** that Plaintiffs' motion for limited discovery[161] is **DENIED AS MOOT.**

**NEW ORLEANS, LOUISIANA,** this _1st_ day of November, 2016.

_Nannette Jolivette Brown_
**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[160] Rec. Doc. 20-1 at 2.

[161] Rec. Doc. 34.